IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

RONNIE OUTLAW,

    Plaintiff,

v.    CIVIL ACTION NO.: CV508-035

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of the Commissioner, denying his claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse the Commissioner's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff filed an application for Supplemental Security Income ("SSI") payments on May 7, 2004, alleging that he became disabled on March 10, 2002, as a result of problems with his right hand, legs, back, breathing, eyesight, and mental impairments. (Tr. at 18, 186, 187). Administrative Law Judge Stables issued an unfavorable decision on September 8, 2006. (Tr. at 114). Plaintiff appealed this ruling and the matter was reversed and remanded by the Appeals Council on January 10, 2007. On remand, the Appeals Council ordered the consolidation of this case and a subsequent benefit application filed by Plaintiff on September 26, 2006. (Tr. at 114-115). On October 12, 2007, Administrative Law Judge Robert O. Foerster ("ALJ" or "ALJ Foerster") held a

hearing, at which Plaintiff appeared, with counsel, and testified. Kim E. Bennett, a vocational expert, also testified at the hearing. (Tr. at 18). The ALJ determined that Plaintiff was not disabled. (Tr. at 25). The Appeals Council denied Plaintiff's request for review of the ALJ's decision and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 6-8).

Plaintiff, born on December 16, 1958, was forty-eight (48) years old when ALJ Foerster issued his decision. (Tr. at 147). He has an eleventh grade education. (Tr. at 740). He has past relevant work as a van driver, security guard, stores laborer, and fork lift truck operator. (Tr. at 264, 773).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir.

2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to adjust to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F. 3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed the sequential process to determine, at Step One, that the Plaintiff has not engaged in substantial gainful activity since the application date of May 7, 2004. At Step Two, the ALJ determined that Plaintiff has the severe impairments of borderline intellectual functioning, depressive disorder, anxiety disorder, and personality disorder. (Tr. at 20). However, the ALJ determined, at Step Three, that Plaintiff's medically determinable impairments do not meet or medically equal a listed impairment. (Tr. at 21). The ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, with the non-exertional limitations of a good ability to follow work rules and a fair ability to relate to co-workers; use judgment; interact with supervisors; function independently; maintain attention and concentration; and understand, remember, and carry out simple job instructions. (Tr. at 22). At the Fourth Step, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (Tr. at 24). The ALJ found, at Step Five, that

Plaintiff was not disabled because he retained the ability to perform other jobs that exist in significant numbers in the national economy. (Tr. at 24-25).

## ISSUE PRESENTED

The issue presented in this review is whether substantial evidence supports the ALJ's decision to deny Plaintiff's benefits.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the

appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I. Substantial evidence supports the ALJ's decision to deny Plaintiff's benefits.**

Plaintiff contends that he is unable to work at even an unskilled level on a regular and sustained basis when the totality of his combined mental impairments are accepted as true. (Doc. No. 19, p. 10). Plaintiff further contends that the vocational expert opined that he would not be able to perform competitive employment when she was asked to assume the higher end of limitations found by Dr. Eaton in a hypothetical. Plaintiff asserts that Dr. Eaton's higher end limitations are corroborated by the findings of his treating counselors and doctors at Satilla Mental Health. Plaintiff further asserts that his Global Assessment of Functioning ("GAF") scores consistently varied from one month to the next. (Id. at 12). Plaintiff contends that his GAF scores evidence severe mental impairments that preclude work on a regular and sustained basis. (Id. at 13).

Defendant asserts that substantial evidence supports the ALJ's determination that Plaintiff can perform work existing in substantial numbers in the national economy. Defendant further asserts that neither the ALJ's first hypothetical, nor Plaintiff's attorney's hypothetical, reflect the ALJ's ultimate assessment of Plaintiff's residual functional capacity. (Doc. No. 21, p. 17). Defendant contends that the ALJ's second hypothetical reflects his ultimate assessment of Plaintiff's residual functional capacity. (Id. at 17-18). Defendant further contends that the vocational expert's testimony in response to the ALJ's second hypothetical establishes that Plaintiff is not disabled. (Id.

at 18). Defendant asserts that there is no basis in the medical record for the limitations contained in Plaintiff's attorney's hypothetical. (Id. at 18-20). Defendant contends that the ALJ gave significant weight to the opinions of Dr. Eaton, Dr. Linda O'Neil, and Dr. David Acker. Defendant further contends that the ALJ was entitled to assemble a residual functional capacity assessment drawing from each of those medical opinions without precisely corresponding to any one of them. (Id. at 19). Defendant asserts that the Commissioner does not endorse the use of the GAF scale in the disability determination process. (Id. at 21). Defendant further asserts that Plaintiff's fluctuating GAF scores fail to demonstrate the presence of severe psychological symptoms for any continuous twelve month period. (Id. at 21-22). Defendant contends that substantial evidence supports the ALJ's denial of Plaintiff's benefits because his decision relied on the vocational expert's testimony. (Id. at 22) (citing Jones v. Apfel, 190 F. 3d 1224, 1230 (11th Cir. 1999)).

Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

Substantial evidence supports the ALJ's decision to deny Plaintiff's benefits. It appears from Plaintiff's Brief that he is only contesting ALJ Foerster's findings regarding his mental ability to do work related activities. ALJ Foerster remarked that he gave

significant weight to the opinions of the State Agency Consultants, specifically referencing Exhibit 14F (a case analysis by Dr. Terry W. Banks), as well as Exhibits 17F and 18F (Psychiatric Review Technique forms completed by Dr. O'Neil). ALJ Foerster further remarked that he also gave significant weight to the opinions of Dr. Acker and Dr. Eaton. (Tr. at 24). The ALJ observed that while Plaintiff has mental impairments, the results of two consultative psychological evaluations show that he can mentally perform unskilled work. (Tr. at 24). ALJ Foerster determined, after a careful consideration of the entire record, that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels. (Tr. at 22). However, ALJ Foerster observed that Plaintiff's ability to perform work at all exertional levels is compromised by non-exertional limitations. (Tr. at 25). ALJ Foerster determined that Plaintiff has the non-exertional limitations of a good ability to follow work rules and a fair ability to relate to co-workers; use judgment; interact with supervisors; function independently; maintain attention and concentration; and understand, remember, and carry out simple job instructions. (Tr. at 22). The ALJ's residual functional capacity assessment is supported by the record. Dr. Eaton found that Plaintiff had a good ability to follow work rules. (Tr. at 641). Dr. Eaton further found that Plaintiff had a fair ability to relate to co-workers; interact with supervisors; maintain attention and concentration; and understand, remember, and carry out simple job instructions. (Tr. at 641-642). Regarding Plaintiff's ability to use judgment, State Agency Consultant Doctors O'Neil and Celine Payne-Gair both opined that Plaintiff's ability to make simple work-related decisions was not significantly limited. (Tr. at 672, 690). Dr. O'Neil and Dr. Payne-Gair further opined that Plaintiff's ability to sustain an ordinary routine without special supervision was not

significantly limited, which reflects their assessment of his ability to function independently. (Id.).

ALJ Foerster's determination that Plaintiff is capable of performing work existing in significant numbers in the national economy is supported by substantial evidence because he based that determination on the testimony of the vocational expert.[1] The ALJ posed two hypotheticals to the vocational expert. The ALJ's first hypothetical was taken verbatim from Dr. Eaton's assessment of Plaintiff's ability to do work related activities. (Tr. at 775-776). The vocational expert testified that such a person could perform Plaintiff's past relevant work as a stores laborer, as well as find employment as a floor waxer, kitchen helper, and nursery laborer. (Tr. at 776-778). The ALJ's second hypothetical to the vocational expert described a person matching Plaintiff's age, education level, work experience, and impairments. The second hypothetical further described a person with no exertional limitations, who was able to handle routine job stress, relate appropriately to co-workers and supervisors, adjust to routine work changes, follow simple job instructions, and could sufficiently pay attention and concentrate while doing an unskilled job. (Tr. at 778). The vocational expert testified that such a person would not be able to perform any of Plaintiff's past relevant work; however, he would be able to find employment as a floor waxer, kitchen helper, and nursery laborer. (Tr. at 779). It is clear from ALJ Foerster's decision that he relied on the vocational expert's response to the second hypothetical. In ALJ Foerster's decision, he ultimately determined that Plaintiff was unable to perform any past relevant work, but could find employment as a floor waxer, kitchen helper, and nursery laborer, just as the

---

[1] In Jones v. Apfel, the Court found that an ALJ may rely solely on vocational expert testimony to support a finding that a claimant can perform jobs that exist in the national economy. 190 F. 3d 1224, 1230 (11th Cir. 1999); see also Zimmer v. Comm'r of Soc. Sec., 211 Fed. Appx. 819, 820 (11th Cir. 2006).

vocational expert opined in response to the ALJ's second hypothetical. In contrast, the vocational expert testified that the first hypothetical person would be able to perform Plaintiff's past relevant work as a stores laborer. Thus, substantial evidence supports ALJ Foerster's finding at Step Five because he relied on a vocational expert's response to a hypothetical question that comprehensively described Plaintiff's impairments[2] in order to articulate specific jobs that Plaintiff is able to perform[3]. Plaintiff's contention that the vocational expert's response to his attorney's hypothetical showed that he was unable to perform competitive employment is without merit because the hypothetical need only include the impairments which the ALJ accepts as true.[4]

Plaintiff's assertion that his GAF scores evidenced severe mental impairments that would preclude work on a regular and sustained basis is unavailing. The undersigned initially notes that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65). Further, Plaintiff's GAF scores fail to establish that his mental impairments imposed serious limitations for a continuous twelve month period, as required for a finding of disability. See 42 U.S.C. § 1382c(a)(3)(A). Plaintiff referenced GAF scores from 2006, but those scores include a GAF score out of the serious symptom range. Plaintiff further referenced GAF scores from 2004, but those scores include two GAF scores outside of the serious symptom range. ALJ Foerster

---

[2] See Jones, 190 F. 3d at 1229.
[3] See Cowart, 662 F. 2d at 736.
[4] See McKay, 1999 WL 1335578 at *7 (internal citations omitted).

was not required to specifically discuss Plaintiff's GAF scores.[5] ALJ Foerster's decision gave full consideration to Plaintiff's medical condition as a whole, as he adequately addressed Plaintiff's physical and mental impairments. It also appears that ALJ Foerster considered Plaintiff's GAF scores, but declined to specifically discuss them, because his decision specifically cited to a May 17, 2006, medical note from which one of Plaintiff's GAF scores originated. (Tr. at 21). ALJ Foerster was not required to discuss Plaintiff's GAF scores because he considered Plaintiff's medical condition as a whole and the scores did not show that Plaintiff's mental impairments imposed serious limitations for a continuous twelve month period. See Dyer, 395 F. 3d at 1211. Finally, this Court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. See Id. at 1210. As such, even if Plaintiff's GAF scores were to suggest that he were disabled, this Court would still affirm ALJ Foerster's decision because it is supported by substantial evidence. See Id.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 31st day of August, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[5] See Dyer, 395 F. 3d at 1211 (holding that an ALJ is not required to refer to every piece of evidence in his decision, provided that the reviewing court is able to conclude that the ALJ considered the claimant's medical condition as a whole).